65 N.J. Super. 483 (1961)
168 A.2d 209
ANTHONY BALAZINSKI, PLAINTIFF-RESPONDENT,
v.
MARY LEBID, DEFENDANT-APPELLANT. EFROSINIA ILKOVNA DOCHILO, PLAINTIFF-RESPONDENT,
v.
MARY LEBID, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1961.
Decided February 15, 1961.
*487 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Abraham S. Gechtman argued the cause for appellant.
Mr. Morton Stavis argued the cause for respondent Efrosinia Ilkovna Dochilo (Messrs. Gross & Stavis, attorneys).
Mr. Frank P. Marano argued the cause for respondent Anthony Balazinski.
The opinion of the court was delivered by KILKENNY, J.A.D.
The defendant Mary Lebid appeals from a judgment of the Superior Court, Chancery Division, Essex County.
Upon the consolidated trial of the above actions, the Chancery Division resolved the dispute among the parties as to the ownership of premises at 151 Fleming Avenue, Newark, New Jersey. It held that the plaintiff Anthony Balazinski was entitled to an undivided one-half interest therein, as the son and sole heir of Wlady (also known as Wladyslawa) Doczylo, who died intestate in New Jersey on June 29, 1951; the defendant Mary Lebid was entitled, subject to the dower therein next mentioned, to an undivided one-half interest therein, as devisee of the property under *488 the last will and testament of Andrew Doczylo, who died testate in New Jersey on July 30, 1954; and the plaintiff Efrosinia Ilkovna Dochilo, as the lawful wife and widow of Andrew Doczylo, was entitled to dower in the one-half interest that passed to Mary Lebid.
For brevity, but with due respect, we shall refer to the parties hereinafter by their first names.
The correctness of the Chancery Division decision depends upon the marital status of Andrew and Wlady, when the property was conveyed to them on July 31, 1928. If they were then lawfully husband and wife, they took as tenants by the entirety, there having been no qualifying words in the deed to the contrary. Danes v. Smith, 30 N.J. Super. 292, 304 (App. Div. 1954). If there was a tenancy by the entirety, Andrew would have been vested with the whole fee upon the death of Wlady in 1951, the title having remained unchanged in their names since the conveyance to them. Central Trust Co. v. Street, 95 N.J. Eq. 278 (E. & A. 1923). In such case, the defendant Mary Lebid would have been entitled to the whole fee, as devisee of Andrew who died in 1954. Hence, she would be justifiably aggrieved by the ruling of the Chancery Division.
On the other hand, a conveyance of real estate to a man and woman, who are not lawfully husband and wife at the time of the conveyance, cannot create a tenancy by the entirety. As Judge Jayne aptly put it in Danes v. Smith, supra, 30 N.J. Super., at p. 305:
"A tenancy by the entirety without coverture is as unimaginable as a tree without a root."
See, too, Wyckoff v. Young Women's Christian Ass'n, 37 N.J. Super. 274, 281 (Ch. Div. 1955); Polombo v. Polombo, 48 N.J. Super. 13 (Ch. Div. 1957). Under modern real property law, a conveyance of real estate to two persons, who are not husband and wife, creates a tenancy in common, in the absence of qualifying words creating a joint tenancy. In a tenancy in common, there is no right of survivorship, *489 but in a joint tenancy or tenancy by the entirety there is. There having been no qualifying words in the 1928 deed to Andrew and Wlady, they took as tenants in common, if they were not then lawfully husband and wife. The trial court found that they were not legally married at the time of this conveyance, because Andrew's former wife, Efrosinia, whom he had married in 1901, prior to the alleged marriage to Wlady, was still living; and that prior marriage had never been dissolved. If that finding was correct, then the court's conclusions as to ownership were proper.
The defendant Mary Lebid does not question the soundness of the trial court's determination as to the ownership of the property, if its finding of Andrew's marital status is supported by competent evidence. But she argues that the finding is based upon inadmissible and insufficient evidence. She also contends that the judgment in her favor by the Essex County Court, Probate Division, admitting Andrew's will to probate, after a contest, makes the issue of ownership of the property res adjudicata, because the property was devised to her by that will.
Clearly, the County Court judgment in the will contest did not make the present title dispute res adjudicata. The County Court trial of the issues of fraud, undue influence, and testamentary capacity related to the validity of Andrew's will, executed nine days before he died, and was not concerned with and did not decide the ownership of the property or the validity of the marriage between Andrew and Wlady. The plaintiff herein, Anthony, who was the caveator in the County Court, was not obliged to litigate marital status in the will contest or title questions and, not having done so, is not precluded by any doctrine of waiver or res adjudicata. Nor are the plaintiffs herein bound by the fact that the County Court judgment of May 21, 1956, settling Mary's account as executrix of Andrew's estate, contained a self-serving recital gratuitously inserted by her or her attorney therein, without the apparent knowledge or consent of Anthony or Efrosinia, that:
*490 "5. The title to said real estate devised to plaintiff, Mary Lebid, under the will of Andrew Doczylo is vested solely in said plaintiff [Mary Lebid]."
That recital was not an adjudication of any "right, question or fact distinctly put in issue" by the contest in the County Court. Nor was plaintiff Efrosinia a party thereto. Hence, the claim of res adjudicata is without merit. See Robinson-Shore Development Co. v. Gallagher, 26 N.J. 59, 67 (1958).
The evidence actually admitted by the trial court, assuming proper identification of the parties, was sufficient to establish that Andrew married Efrosinia in the village of Chernevo, Ukraine, Russia, on February 9, 1901, long before his purported marriage to Wlady in 1928; Efrosinia was still living and her marriage to Andrew had never been dissolved prior to Andrew's death.
In further detail, these proofs showed the following. Two children, Anna and Ivan, were born in 1906 and 1908 respectively, of the 1901 marriage between Andrew and Efrosinia. In 1910 Andrew emigrated to the United States alone. On July 15, 1917 Andrew went through a ceremonial marriage with one Margareth Murnane, after describing himself in the application for a marriage license as single and 35 years of age on November 6. There is no evidence of what became of Margareth, except that in Andrew's March 12, 1928 application for a license to marry Wlady in "April," he described himself as a widower, 50 years of age on November 30, and stated his former wife's maiden name was "Margaret Mornier." In answering the question, "When and where did your wife die?," he stated only, "Newark," without furnishing any date. However, on March 10, 1925 he made a declaration of intention to become a citizen of the United States and therein described himself as 45 years of age and born in Czerniawa, Galicia, Austria on November 16, 1879. He then swore: "I am married, the name of my wife is Frozina; she was born at Austria and resides at  deceased"
*491 The marriage license issued to Andrew and Wlady on March 14, 1928 was evidently never used since it was never surrendered as required by its terms. It was found among Andrew's papers after his death. No official certificate of the marriage of Andrew and Wlady was offered in evidence, though obviously one was readily obtainable from the State Bureau of Vital Statistics, if the parties had gone through a ceremonial marriage in New Jersey. However, the plaintiff Anthony testified that his mother, Wlady, had told him that she had married Andrew and he knew that they had lived together as husband and wife since 1923 or 1924. Furthermore, the property in question was conveyed to "Wlady Docylo and John Docylo" in 1926. Anthony testified that he was the "John Docylo" mentioned in that deed, though the property belonged to Andrew and Wlady. Andrew requested this to hide his interest from creditors. On May 8, 1928 Wlady conveyed her interest to "John Docylo." On July 31, 1928 Anthony, using the alias of "John Docylo," made the conveyance to Andrew and Wlady whose legal effect we are considering. Therefore, while the suggestion is strong that Andrew and Wlady never married ceremonially, there is a rebuttable presumption that their marital cohabitation was lawful, so as to give rise to an inference that there was at least a common law marriage. Common law marriages may not be validly entered into in New Jersey since December 1, 1939, though those contracted before that are upheld, if no impediment to a valid marriage existed. L. 1939, c. 227, N.J.S.A. 37:1-10.
The pretrial order contained this admission:
"It is further admitted that on March 14, 1928, the said Andrew Doczylo went through a marriage ceremony with Wladyslawa Balazinski. All documents in connection with said marriage ceremony are to be marked in evidence by consent."
Plaintiffs' attorneys made this concession inadvertently when they were shown the marriage license at the pretrial, rather than a marriage certificate. At the trial no marriage certificate, *492 or copy thereof, was offered. Such inadvertence by counsel in making the concession in the pretrial order would not preclude a court of equity from finding that no ceremonial marriage took place, as the non-use of the license indicates. But we deem this erroneous admission not controlling, since there could have been in 1928 a common law marriage. The more important question is whether any marriage in 1928 between Andrew and Wlady was valid or bigamous.
The presumption of innocence of crime outweighs the presumption of continuity of life, so that a prior spouse will be deemed to be dead and the prior marriage dissolved. The burden of overcoming the presumption in favor of the validity of the subsequent marriage is upon the party challenging its legality. Keller v. Linsenmyer, 101 N.J. Eq. 664 (Ch. 1927); Tyll v. Keller, 94 N.J. Eq. 426 (E. & A. 1923); Michaels v. Michaels, 91 N.J. Eq. 408 (Ch. 1920). But where the prior marriage is established and it is shown by clear and convincing evidence that the parties thereto are actually living and that no dissolution of the marital bond was obtained by either party, the presumption of validity of the subsequent marriage, ceremonial or common law, is overcome and it must be labelled bigamous and void. Simmons v. Simmons, 35 N.J. Super. 575, 581 (App. Div. 1955).
In essence, defendant contends on this appeal that the trial court erred in admitting and evaluating certain proofs, which formed the basis for its findings that Andrew married Efrosinia in 1901, that Efrosinia was alive on July 31, 1928 and when Andrew died in 1954, and that their marriage had never been dissolved during their joint lives. We direct our attention to that challenge.
The fact of Andrew's marriage to Efrosinia was demonstrated by several items of evidence, whose admissibility we shall consider seriatim. The court admitted a copy of a marriage certificate from the Chief of the Archives Registry Office, Mostisky District, Drogobych Region, Ukranian Soviet Socialist Republic, verifying the marriage on *493 February 9, 1901 of "Andrey Ilkovich Dochilo, born in 1878 in the Village of Chernevo," and "Evfrozina Ilkovna Fedevich, born in 1887 in the Village of Chernevo." This is a copy of a public record of a foreign country. Proof of its authenticity is governed by N.J.S. 2A:82-16, which provides that such documents shall not be admitted unless exemplified "according to the Acts of Congress of the United States." 28 U.S.C. § 1741 requires certification of public records of a foreign country by the lawful custodian thereof and an authentication of such certification by a United States resident consular officer. Such authentication of the above marriage certificate was lacking and, by reason of this technical deficiency, the marriage certificate should not have been received in evidence. Anthony's attorney frankly conceded this on oral argument.
However, if there was other competent evidence to prove Andrew's earlier marriage to Efrosinia, the erroneous admission of the marriage certificate does not warrant reversal. McCormick, Evidence § 60, p. 137 (1954); 5 C.J.S. Appeal and Error § 1564(5) p. 1270. Andrew's sworn statement on March 10, 1925 in his declaration of intention for American citizenship, of his prior marriage to "Frozina," allegedly deceased, was clearly admissible under the pedigree exception to the hearsay evidence rule. A matter of family relationship was in issue, the declaration was made by a person who had personal knowledge of the fact asserted, it was made ante litem motam, and the declarant was dead. Therefore, all of the requirements for the admission of the pedigree evidence were satisfied. Wigmore on Evidence (3d ed.), § 1481 et seq.; McKelvey on Evidence (5th ed.), §§ 214 to 223; Richardson on Evidence (7th ed.), § 257a, p. 209; Barsotti v. Bertolino, 121 N.J. Eq. 346 (E. & A. 1937). The slight variances among the spellings "Frozina," "Fruzga," "Efrosinia," and "Evfrozina," in the several documents, Russian and American, are understandable. It is also noteworthy that in his 1925 application for citizenship *494 papers, he made no reference to his 1917 marriage to Margareth Murnane, but recognized his marriage to "Frozina."
The testimony of Emanuel Metzger, Esq., an attorney who prepared a will for Andrew in 1948, and Andrew's written declaration of family relationship in that executed will, are also admissible under the pedigree exception and probative of his earlier marriage to Efrosinia. Metzger testified from notes made by him in 1948, when Andrew came to have his will prepared, and furnished the particulars to be inserted in the will. Metzger then expressed surprise when Andrew referred to his wife in Russia, because he had previously met Wlady and knew that Andrew and Wlady were living as husband and wife. In Metzger's words:
"he [Andrew] told me that the woman he lives with and who was known as his wife is not his wife and his lawful wife is still alive and lives in Russia. And at that time he told me that he owned a house at 151 Fleming Avenue in Newark, and he said to me that the deed to the property was in his name and in the name of this woman."
We find no sound basis for defendant's contention that Andrew's conversations with his attorney for the preparation of his will were confidential and privileged, thereby precluding the attorney from testifying thereto. When he executed his will, he may have intended that its contents should not be divulged by his attorney during his lifetime. But it is natural to assume that he would not want this confidence to survive his death. A testator reasonably intends that any secrecy as to the will's contents at the time of execution and before his death must yield to public disclosure upon probate, after he has died. This will was in fact left with the surrogate on September 22, 1954, after Andrew died.
Furthermore, the defendant made no objection at the trial to the admission of Mr. Metzger's testimony on the basis of lawyer-client privilege. In fact, she enjoyed the benefit of a plenary cross-examination. Such conduct precludes the defendant from raising the question of privilege for the first time on appeal. The client himself may waive the *495 right to assert the privilege by lack of a timely objection. Dumont v. Dinallo, 4 N.J. Super. 371 (App. Div. 1949). When a lawyer is called to testify to a confidential communication from his client, he has a duty to assert the privilege on behalf of his client. His failure to object would not prevent an appellate review, if the privilege had been violated. However, the receipt of the attorney's testimony in this case was not reversible error.
In Andrew's 1948 will, which his attorney drew for him upon information which he furnished, he bequeathed $2,000 to his daughter Anna Doczylo Huzil, $2,000 to his son Ivan, $1,000 "to my wife, Fruzga Doczylo, of the Village of Cherniowa, State of Moscisko, Russia," and the residue to his daughter Anna. He made no mention of or provision for Wlady and did not recognize her as his wife in this formal document. And this was 25 years after he had commenced living with Wlady and while they were apparently still residing together. Such a solemn declaration by a person who best knew his own marital status at the time was not only competent evidence, but was also persuasive proof of his marriage to Efrozinia, or Fruzga, and that she was still living in 1948. The specification in the will of the place of residence of his wife, son, and daughter in the "Village of Cherniowa, State of Moscisko, Russia," as written by Mr. Metzger, reasonably identifies them and coincides with the references in other documents to her residence in the village of "Chernevo, Mostisky District" or "Cherniova."
By order of this court of May 2, 1960, the record herein was supplemented by the addition of the answers to interrogatories and cross-interrogatories addressed to Efrosinia in Russia, pursuant to letters rogatory issued by the Superior Court in this matter on June 18, 1958. Her sworn answers before the People's Court of the Motissky District and the supporting exhibits confirm the trial court's findings of the 1901 marriage of Andrew and Efrosinia, the continued existence of Efrosinia, and the fact that this marriage *496 had not been dissolved prior to Andrew's death. That evidence sufficiently identifies the parties in many details. Efrosinia's testimony corroborates the facts set forth in the marriage certificate referred to above, so that, even without the certificate, there is direct proof of that marriage. Her personal presence before the Russian court and her testimony established that she was still living. Her avowal as to their children Anna and Ivan, and that she remained married to Andrew and was never divorced, coincides with Andrew's declarations to Mr. Metzger and in his 1948 will.
The use of letters rogatory is expressly sanctioned by our rules. R.R. 4:18-3. Their use is certainly necessary in a situation involving testimony in the U.S.S.R., which does not permit the taking of depositions within its borders. See 4 Moore, Federal Practice, § 28.06, p. 1911. The letters were properly addressed to the appropriate judicial authority, and the letter from the United States Embassy in Moscow, set forth in the appendix to defendant's reply brief, makes it clear that the letters rogatory went through proper channels. The hearsay objection to the use of Efrosinia's answers to the interrogatories is patently without merit. See Uniform Rules of Evidence, § 62(7), § 63(3).
The trial court also received in evidence, over objection, a Russian "Certificate of Survivorship" executed by the notary of the Usolie District, Province of Irkutsk. The translation states that on April 28, 1956 Efrosinia Ilkovna Dochilo appeared in person at the notarial office there, her identity was ascertained, and that on the basis of the aforesaid she "is alive and resides in the City of Usolie Sibirskoe, Vacum Street 2, Flat 3." Another Russian document admitted in evidence, over objection, is entitled "Act of Witnesses' Testimony." It shows by its translation that Ivan Ivanovich Tropak and Vasil Grigorievich Fedina, both residing in the Village of Cherniava, Mostiski District, signed this document before the chairman of the Cherniava Village Council. These witnesses, not related to the Dochilo family and having no interest in the estate of Andrei Dochilo, *497 declared in that document that they knew of the marriage of Andrei and Efrosinia in 1901 in that village; that the marriage has never been dissolved; that two children, Anna in 1906 and Ivan in 1908, were born of that marriage; that Andrei left for the United States in 1910, and that Efrosinia never remarried. It also set forth the residences of Efrosinia and the two children. These two documents were admissible and further confirm the findings of the trial court. As to their authentication, the provisions of R.S. 41:2-17 were sufficiently complied with. Even without these two documents, there is ample competent proof of the facts found.
As to other technical objections raised by the defendant in her brief, we have examined these contentions and find no reversible error therein.
We find on the whole record clear and convincing evidence of a valid marriage between Andrew and Efrosinia in 1901 and of its continued subsistence to the date of his death in 1954. The presumption of validity of any later marriage which may have been contracted between Andrew and Wlady was thus overcome.
Since any purported marriage between Andrew and Wlady could not be valid on July 31, 1928, when the subject property was conveyed to them, because of Andrew's prior, undissolved marriage to Efrosinia, who was then living, Andrew and Wlady took title as tenants in common. Accordingly, the trial court correctly determined the respective interests of the parties in the property, and its judgment is affirmed.