NEVICELLA GALASSO, PLAINTIFF, v. CARMINE DEL
GUERCIO, HOLY CROSS CEMETERY, A NEW JERSEY
CORPORATION, MONSIGNOR JOSEPH A. DOYLE,
ARCHDIOCESAN CEMETERY DIRECTOR, THE SPATOLA
FUNERAL HOME, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 23, 1971.

*Mr. Amedeo C. Jacovino* for plaintiff (*Messrs Friedman & D'Alessandro,* attorneys).

*Mr. Jack J. Soriano* for defendant Del Guercio (*Messrs. Marinello, Henkel, Soriano & Klein,* attorneys).

*Mr. Joseph A. Clarken, Jr.* for defendants Holy Cross Cemetery and Monsignor Doyle (*Messrs. Gassert, Murphy* and *Clarken,* attorneys).

HERBERT, J. S. C.   Plaintiff is the widow of Pasquale Galasso, who died March 9, 1970, and is the sister of defendant Del Guercio. The subject matter in dispute is the use of space in the Del Guercio family mausoleum in Holy Cross Cemetery, North Arlington. (The cemetery is located in Bergen County; but the litigants have consented to this court deciding the case. The cemetery has also agreed that the final judgment insofar as it shall relate to the burial of the remains of Pasquale Galasso, shall be binding upon it.)

Defendant Del Guercio immediately after Pasquale Galasso's death objected to use of the mausoleum as Galasso's place of burial. On the eve of the funeral the complaint was filed and an interim restraint obtained, thus enabling plaintiff to have her husband's body placed in the mausoleum at least temporarily. Since the funeral Del Guercio has made it clear that he does not oppose use of the mausoleum as Galasso's final resting place, but he does vigorously object to the placement of Galasso's coffin in the particular space it now occupies. Del Guercio's admitted objective is to save that place for himself.

The mausoleum was built by plaintiff's mother. She died intestate in 1937, survived by all four of her children. Two of the four have since died and their bodies are in the mausoleum. It contains a total of 17 burial spaces, eight on the upper level and nine at the lower level. Including the space in which Galasso's coffin has been placed, seven of the eight on the upper level are occupied, and all nine below are empty. Defendant Del Guercio is a widower and his wife's body is in the mausoleum. Directly opposite her resting place is the coffin of Galasso. Defendant desires to occupy that space when his time comes.

It is provided in the rules and regulations of Holy Cross Cemetery that

Under the Statutes of the State and the regulations of the Management of the Cemetery, if the owner of a lot die, making no disposition of his lot by will, the lot of such intestate descends to his "heirs-at-law"—that is, to the same persons who, by the laws of this State, would inherit any residue of his real estate.

This provision appears to be substantially in accord with *N. J. S. A.* 8:2–21. It follows that when Galasso died his wife—the plaintiff—owned by inheritance from her mother a one-fourth interest in the cemetery plot and the mausoleum erected upon it.

The basic question is whether defendant Del Guercio, as a co-owner with plaintiff, can insist upon his consent being secured as a condition of a lawful burial in the mausoleum for plaintiff's husband. Del Guercio relies upon *N. J. S. A.* 8:2–24, which reads as follows:

The body of any deceased person or the ashes thereof shall not be interred in any plot or lot in a cemetery owned by a cemetery association incorporated under sections 8:1–1 to 8:1–5 of this Title or under any special act, unless the deceased person had, at the time of his decease, an interest in the plot or lot, or was the relative of some person having such an interest, or was the wife or such person or her relative, except by the consent of all persons having an interest in such plot or lot.

In *Friant v. Dolbow,* 41 *N. J. Super.* 84 (Ch. Div. 1956), the statute was construed and applied. It was there held that a co-owner of a cemetery lot, who had failed to get from other co-owners consent to bury her deceased husband in it, had buried him illegally, and at the suit of nonconsenting co-owners disinterment of the body was ordered.

If *N. J. S. A.* 8:2–24 were applicable to Holy Cross Cemetery, then *Friant* would be authority for ordering that Galasso's body be moved to a position in the mausoleum to which defendant Del Guercio consents. The power to grant or withhold permission for any burial at all—if it exists—must include power to consent on condition that only a place on the lot or in the mausoleum approved by the consenting co-owner be used. However, I am informed that Holy Cross Cemetery is not an incorporated cemetery association. The statute, *N. J. S. A.* 8:2–24, applies only to a "plot or lot in a cemetery owned by a cemetery association incorporated under sections 8:1–1 to 8:1–5 of this Title or under any special act * * *." The certificate issued to Mrs. Del Guercio senior, on the strength of which the mausoleum was built, shows on its face that it came from the Roman Catholic Archdiocese of Newark, N. J. One of the provisions of the certificate is that title to the plot in question shall remain in the Archdiocese. The legal power of a diocese of the Roman Catholic Church to own and maintain cemeteries is recognized by statute. *N. J. S. A.* 16:15–11.

Because Holy Cross Cemetery is not an incorporated cemetery association, *N. J. S. A.* 8:2–24 (quoted above) does not apply here and *Friant, supra,* is not a controlling precedent for this case. This conclusion leads the inquiry back to the rules and regulations of Holy Cross Cemetery. They require applications for interment to be made in advance of any burial and specify various conditions to be met by an applicant. At page 16 of the booklet containing the rules and regulations the following provision is found:

If the application is for interment of others than the immediate family of the owner of the lot or grave, permission in writing or in person from such owner must be presented.

Galasso was, of course, a part of the immediate family of plaintiff, and she was an owner, although not the sole owner. Was she required, under the quoted regulation, to get consent from all co-owners to place her husband's body in the mausoleum? It is my judgment that she was not. If plaintiff had died and if her husband or anyone else had made application to Holy Cross Cemetery for interment of her body, there surely would have been no need to ask co-owners for permission to use the Del Guercio tomb. The ownership interest of plaintiff would have been enough to rule out any such requirement. It is my view that the regulation of Holy Cross Cemetery, quoted above, puts deceased members of the immediate family of a co-owner in the same class, in this respect, as a deceased owner or co-owner. If that were not so, any degree of ownership of a cemetery plot, less than sole ownership, would have questionable practical value; burial of a co-owner's spouse or child could always be blocked by a refusal of another owner to consent to burial.

It is my view that the proper construction of the rule under consideration is to read it this way:

If the application is for interment of others than the immediate family of the owner [or a co-owner] of the lot or grave, permission in writing or in person from such owner [or from all such co-owners] must be presented.

It follows that plaintiff needed no permission from her brother for the burial in the Del Guercio mausoleum of her husband, a member of her immediate family. It also follows, I think, that plaintiff was not restricted in her choice of empty spaces. A cemetery lot may be held by two or more persons in common. 14 *Am. Jur.* 2d, *Cemeteries,* § 26 at 734. A general rule of tenancies in common is that no

cotenant has a right to exclude other cotenants or to appropriate to his sole use any particular portion of the property in which all have an individed interest, 20 *Am. Jur.* 2d, cotenancy and joint ownership, § 34, 126, and when the complaint was filed the controversy related only to empty places in the. tomb, one of which defendant Del Guercio sought to reserve to himself for future use, contrary, it seems, to the stated general rule.

*Antrim v. Malsbury,* 43 *N. J. Eq.* 288 (E. & A. 1887), involved an attempt to keep a particular grave site from being used, so that it might be used sometime in the future for the burial of a member of another family. That case was instituted by members of the Malsbury family for the purpose of establishing the right to bury Mrs. Malsbury by the side of her deceased husband in a free burial ground owned by a church. Opposition came from the trustees of the church and members of the Wright family on the basis that the particular plot had previously been appropriated by Mr. Wright for his own and family use. The court held there was insufficient proof as to the appropriation of any lot by any individual or family, and therefore neither plaintiffs nor defendants had any better claim to use the particular plot in question. The court concluded that the burial ground was purchased by the church for all its members, to be buried therein as their deaths might occur. Consequently, no individual member could reserve for his own future use any graves which were held by the church for the benefit of all.

Another case of some interest is *Ryan v. Schmit,* 1 *Wis.* 2d 215, 83 *N. W.* 2d 685 (Sup. Ct. 1957), where a widower, nearly three years after his wife's burial, sued to compel the moving of her body from one grave site to another within a plot which the wife at the time of her death owned in common with her two sisters. Plaintiff at the time of the funeral had instructed the undertaker to place the body in grave number 1 on the plot, but the burial was in grave number 4 by direction of the two sisters. The court refused to

order the sisters, the undertaker and the cemetery to permit disinterment and reburial in grave number 1, saying in part:

> Plaintiff contends for a rule that when several persons are entitled to burial in a lot containing several grave sites, each shall have his choice among the sites available at the time of his death. Plaintiff phrases his rule: "first dead, first choice." This rule is not contained in any statute. It is not alleged that any regulation of the Cemetery, any terms of its conveyance of the lot, nor any agreement among the owners so provides. Plaintiff has cited no case which applies such a rule.
>
> \*  \*  \*  \*  \*  \*  \*  \*
>
> We are mindful of the fact that co-owners may disagree as to who shall lie next to whom and that an unfortunate situation might arise where disagreement prevented burial within the family lot. If the court were then asked to intervene, it might resort to the rule urged by plaintiff, if no other basis for resolving the dispute appeared more equitable under all the circumstances. The right being vindicated by the court in such a case would be the right of burial on the family lot, rather than any right to a particular location. It should be noted that the action before us is one to erect disinterment, brought two years and ten months after the burial. A formula which might commend itself as an expedient means of resolving a dispute which obstructed rightful burial does not delineate a right which a court must vindicate by ordering disinterment and transfer to another site on the same lot. [83 *N. W.* 2d at 688]

Mrs. Galasso's action was started before her husband's burial, and the actual ruling of the Wisconsin court has no application here, but the quoted comments from the opinion are helpful. I think the equitable decision here is to recognize plaintiff's right to have her husband's body laid to rest in the mausoleum and, beyond that, do nothing to interfere with her choice of a particular location within the structure not already occupied as a result of an earlier burial.

The judgment to be prepared by plaintiff's attorney should declare the right of Mrs. Galasso to have her husband buried in the Del Guercio mausoleum and enjoin the defendants from removing the coffin from the location in which it has been placed unless Mrs. Galasso should consent to such removal.