240 N.J. Super. 86 (1990)
572 A.2d 662
GERALDINE WEISS AND JEFFREY J. WEISS, PLAINTIFFS-APPELLANTS,
v.
CEDAR PARK CEMETERY, PHYLLIS RATAFIA WEISS, LILLIAN RATAFIA, JANE DOES 1 AND 2, AND RIVERSIDE CHAPEL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1990.
Decided April 12, 1990.
*88 Before Judges PETRELLA, HAVEY and STERN.
Barbara deMare argued the cause for appellants Geraldine Weiss and Jeffrey J. Weiss (deMare & Harvey, attorneys, Barbara deMare, on the brief).
Michael A. Sicola argued the cause for respondent Cedar Park Cemetery (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys, Michael A. Sicola, on the brief).
Stuart Hecker of the New York Bar, pro hac vice, argued the cause for respondents Phyllis Ratafia Weiss, Lillian Ratafia and Jane Does 1 and 2 (Rudolph R. Binelli, Jr., attorney, on the brief).
George P. Helfrich, Jr. argued the cause for respondent Riverside Chapel.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs, Geraldine Weiss, surviving spouse of one of two original co-owners of a cemetery plot in defendant Cedar Park Cemetery (Cedar Park), and her son Jeffrey J. Weiss, appeal from the entry of summary judgments in defendants' favor dismissing their suit based on the claimed wrongful interment of Louis Ratafia, father of defendant Phyllis Ratafia Weiss. On appeal plaintiffs contend that genuine issues of material fact should have precluded summary judgment. They also argue that as a matter of law not only were defendants not entitled to judgment, but that an earlier unopposed motion for summary judgment, granted in favor of defendant Cedar Park, should be vacated. We affirm.
This dispute, between what we can refer to loosely as an extended "family" since almost all the individual participants *89 are related by either blood or marriage,[1] began by the filing of a complaint on April 1, 1985, alleging various causes of action. Plaintiffs alleged that Phyllis Ratafia Weiss, her mother Lillian, and Phyllis's two sisters ("Jane Does 1 and 2") (the Ratafia defendants), wrongfully conspired to obtain the burial of Phyllis's father, Louis, in a cemetery plot which they alleged was owned by Norman Weiss. They charged the Ratafia defendants with conduct which inflicted mental, emotional and physical harm upon them. Plaintiffs also alleged fraud and misrepresentation was used to obtain the burial of Louis Ratafia in the Weiss plot. They also asserted that Cedar Park was negligent in permitting the unauthorized burial of Louis Ratafia; that Riverside Chapel in New York (Riverside) was negligent in causing Louis Ratafia to be buried in the Weiss cemetery plot without permission and in accepting and using a forged authorization form in connection with the burial; that Cedar Park Cemetery was in breach of contract by burying Louis Ratafia in the Weiss cemetery plot without permission; and that plaintiffs would "suffer irreparable injury" unless all of the defendants were required to have the body of Louis Ratafia removed from the cemetery plot. Essentially, all of these allegations were contested factually as well as on legal grounds.
Cedar Park's motions for summary judgment and for dismissal of all punitive damages claims were denied in 1986 and 1987, respectively, apparently on the ground of incomplete discovery. On July 24, 1987 Cedar Park moved again for summary judgment *90 dismissing all complaints and cross-claims except for Jeffrey Weiss's claim with respect to his conversations with a Cedar Park representative on the date of the funeral and burial of his father in the subject funeral plot.[2]
The Ratafia defendants moved for summary judgment in June 1988. Riverside joined in that motion. The motion was heard on September 16, 1988, and granted as to all defendants. A written order incorporating by reference the judge's opinion was entered that date.[3]
The facts are gleaned from the record[4] on the motions, including answers to interrogatories and deposition transcripts.[5] Some of the facts are disputed and the issue is whether they are material facts sufficient to defeat a summary judgment motion. For clarity in understanding the problem we will at times refer to some controverted facts, recognizing that on a summary judgment motion the party opposing the motion is entitled to all the reasonable inferences from the facts presented. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954).
On February 15, 1948 two brothers, Norman and Mortimer *91 Weiss, purchased a burial plot containing eight grave sites[6] at the Cedar Park Cemetery in Emerson. The conveyance was to both brothers and "their heirs and assigns, forever...."
Mortimer Weiss died on October 6, 1957 and was buried in one of the plots, authorization for which was executed by the surviving original co-owner, Norman. Mortimer was survived by his two sons, Joseph Weiss and Thomas Weiss, who inherited equal halves of their father's estate pursuant to his will. Although Mortimer's will, dated August 29, 1955, made no specific disposition with respect to the cemetery plot, it recited his desire to "be interred in a plot in the Cedar Park Cemetery located in New Jersey and commonly owned by my brother Norman and myself."[7]
In 1958 or 1959 Mortimer's son Joseph married defendant Phyllis Ratafia. Plaintiffs strongly disapproved of the marriage and apparently attempted to dissuade Joseph from marrying Phyllis for various reasons. Plaintiffs were said to have "despised Louis and Phyllis Ratafia," and had little to do with Joseph and his family. Joseph died on October 26, 1973 and was buried in the family plot in Cedar Park on October 28, 1973. The authorization for his interment was signed by his uncle, Norman Weiss. Joseph was survived by his wife, Phyllis Ratafia Weiss, and two children, Michael and Geniene, all of whom are defendants.
Louis Ratafia, Phyllis's father, died on November 10, 1983 and was buried from defendant Riverside Chapel. Phyllis was told that she needed a burial authorization, but she testified in depositions that she did not obtain it. There was a statement that someone at Riverside indicated there would be a paper for *92 Phyllis' son to sign, but she said no one approached her or her son about it. Nevertheless, apparently an authorization was executed on November 14, 1983, bearing what purports to be the misspelled signature of Norman Weiss. Phyllis also testified that she was told on several occasions by women employees of Cedar Park that she was entitled, as Joseph's wife, to be buried in the family plot and her children, as Joseph's heirs, would be co-owners of the plot. Although she received "legal papers" from the cemetery which she was supposed to have filled out in order to have their children listed as heirs to Joseph's portion of the Weiss plot, she did not complete it because she did not have the $25 filing fee. Phyllis said she was unaware that after Mortimer's death the only name Cedar Park showed on its records as able to authorize a burial in the plot was Norman Weiss.
Chester Grafkowski, an employee of Riverside, indicated that it is normal procedure for the chapel to obtain from the cemetery the name of the individual authorized to order burial in the plot. In Louis Ratafia's case, Grafkowski called the cemetery and was informed that Norman Weiss had to authorize the burial. He said he printed Norman's name on the authorization form which he then gave to the family to have signed. Next to the printing he wrote "family getting," indicating that the family was to obtain the signature. The form was not signed in his presence.
Herbert Klapper, vice-president of Cedar Park, stated that normally the funeral director calls the cemetery and places an order for a grave opening. When this occurs a cemetery employee checks the files to locate the grave site and obtains details from the funeral director over the telephone. The funeral director is then instructed to bring with him a board of health certificate and a document entitled, "authorization for burial," which is to be presented when he comes to the office and signs the interment order. The authorization for burial must be signed by the individual whose name is on file with the cemetery  generally the contracting party. The only "checking" *93 done by the cemetery is to verify that the name of the individual authorizing the burial is the same as the name on file with the cemetery. There is no verification of the signature for authenticity because the cemetery maintains no specimen signatures on file.
According to affidavits submitted by Joseph Weiss's children, Michael and Geniene, they were consulted by their mother, Phyllis, about burying their grandfather, Louis Ratafia, in the Weiss family plot and both consented to it. Both indicated that they wanted Ratafia buried there so that they could pay their respects to the memories of their father and both of their grandfathers at the same time they went to visit the cemetery.
Phyllis took the position that only she and her children, as heirs of Joseph Weiss, are able to lay any claim to Mortimer Weiss's interest in the family burial plot. Although Joseph had a brother, Thomas, he "disappeared" in 1973 and has not been heard from since. Thomas had a wife and two children, but the last Phyllis heard, they were living in Florida. She believed that none of them would be eligible for burial in the plot because Thomas' wife was a Gentile (he married a Christian). Thomas and his wife were married in a church and apparently the children were not raised in the Jewish faith. Only persons who die in the Jewish faith are eligible for burial in Cedar Park Cemetery.[8]
Norman Weiss died on June 19, 1984. According to plaintiffs they first learned that Louis Ratafia was buried in the Cedar Park plot during a telephone conversation with cemetery personnel about Norman Weiss's interment. Plaintiffs assert that they had "demanded" to speak to someone the following day when they arrived at the cemetery for Norman's interment. Jeffrey Weiss spoke to Klapper, and was told that Louis *94 Ratafia's burial in the plot was not Cedar Park's responsibility. He was said to have told plaintiffs that they could sue if they were so inclined.
The motion judge concluded that Norman and Mortimer Weiss took title to the cemetery plot as tenants in common, not as joint tenants, and that they each owned one-half undivided interest in the property. He found that Mortimer's interest devolved to his sons, Joseph and Thomas, pursuant to N.J.S.A. 8A:7-2. Thus, after Mortimer's death Joseph owned an undivided one-fourth interest in the plot and, on Joseph's death, his interest in the plot was inherited by his wife, Phyllis Ratafia, and their two children, Michael and Geniene. Phyllis thus had claim to an undivided one-eighth interest in the plot (or a life estate in same)[9] and Michael and Geniene each owned at least an undivided one-sixteenth interest in the plot. Consequently, the judge concluded that pursuant to N.J.S.A. 8A:7-5, the burial of Louis Ratafia was lawful because, as Phyllis's father and Michael and Geniene's maternal grandfather, he was a blood relative of three of the owners of the plot; and his burial was consented to by these owners, thus authorizing the burial in accordance with the statute. The court found no basis for plaintiffs' claims for emotional distress.
Plaintiffs contend that summary judgment was improperly entered against them because "the documentary evidence raises numerous issues of material fact." The documentary evidence to which plaintiffs refer is primarily the burial authorization form, dated November 14, 1983, for Louis Ratafia. According to plaintiffs, the signature of Norman Weiss (now deceased) was a forgery on that form. They contend that Cedar Park had or should have had notice that the signature was not authentic, thus belying its assertion that it had no notice of any misrepresentations with respect to the burial authorization. This claim *95 also implicates Riverside since there is a dispute as to who furnished the challenged form. Plaintiffs argue that issues of motivation, opportunity, credibility and reasonableness of conduct are jury questions which preclude summary judgment. Finally, with respect to Geraldine Weiss's claim of emotional distress against Cedar Park, plaintiffs argue that such an action could be maintained and that the apportionment of the harm between the Cemetery's conduct and the natural grief existent at a burial is a matter left to the jury's discretion. Plaintiffs also point to Phyllis' total contradiction of all plaintiffs' claims as establishing material issues of fact and credibility, which they argue give rise to jury issues.
The motion judge did not decide the matter on plaintiffs' claim that the burial authorization was forged. He rested his decision on a purely legal determination that Phyllis and her children inherited an ownership interest in the burial plot through Joseph Weiss. As owners they were entitled to bury their blood relative, Louis Ratafia, in that plot. Viewed from this perspective, the authenticity of Norman Weiss's signature was irrelevant. Thus, the factual dispute regarding the burial authorization form is not genuinely material to the case. Our review of the record and the statutory authority upon which the trial judge rested his decision leads us to conclude that the trial judge was correct.
The New Jersey Cemetery Act, N.J.S.A. 8A:1-1 et seq., was enacted effective December 1, 1971, to replace the prior statutory scheme. See N.J.S.A. 8A:12-1 et seq. This 1971 act governs the operation and management of cemetery companies, defines the rights of plot owners and deals with interment of bodies, among other things. N.J.S.A. 8A:1-2 defines an "owner" or "lot owner" as meaning "any person in whose name a lot is of record as owner in the office of a cemetery company." But N.J.S.A. 8A:7-2 makes it clear that a cemetery plot, after interment, is inalienable and "shall upon the death of the owner thereof descend to the heirs at law or devisees of the owner." *96 If the lot owner dies leaving a will which makes no specific provision for the cemetery plot, "such lot or interest therein shall descend to the heirs at law of such owner and shall not go to the devisee or devisees of such owner under any residuary or other clause or provision of such will which merely provides for the disposition generally of real property of which the testator shall have died seized." N.J.S.A. 8A:7-2. If an individual dies owning one or more interment spaces, persons who become the owners thereafter are permitted to sell or dispose of the unoccupied interment spaces, as long as the sale comports with the provisions of the Act and the rules of the cemetery company. N.J.S.A. 8A:7-2.
N.J.S.A. 8A:7-5 describes who may be interred in a particular plot, and provides that:
The body of any deceased person or the incinerated remains thereof shall not be interred in any interment space unless the deceased person had, at the time of his decease, an ownership interest in the interment space, or was the relative of some person having such an interest, or was the spouse of such person or relative of said spouse, except by the consent of the owner or one of the owners of such interment space.
N.J.S.A. 8A:7-10 provides that when there are two or more owners of a burial plot, they may designate one or more individuals to represent that plot and may file written notice of the designation with the cemetery company. However, "in the absence of such notice the cemetery company shall not be liable to any person for the interring or permitting of an interment in the interment space upon the request or direction of any co-owner." N.J.S.A. 8A:7-10.
It is undisputed that the only names Cedar Park had as owners of the Weiss plot on their records were Norman and Mortimer Weiss, the purchasing parties. There was no written designation by them, pursuant to N.J.S.A. 8A:7-10, as to whether either of them represented the interment space. All the cemetery had on file was the contract. Consequently, the cemetery was allowed to rely upon any co-owner's interment *97 authorization.[10]
When Mortimer and Norman bought the cemetery plot, they took title as tenants in common rather than as joint tenants with the right of survivorship. This is so because there is nothing in the deed to indicate that they intended to create a joint tenancy. In the absence of language expressly indicating the creation of a joint tenancy or evidence that such was the intent of the parties, as a matter of law, possession of the two brothers in the property was as tenants in common. N.J.S.A. 46:3-17; In re Coe's Estate, 77 N.J. Super. 181, 195, 185 A.2d 696 (Ch.Div. 1962), rev'd on other grounds 42 N.J. 485, 201 A.2d 571 (1964).
There is no right of survivorship in a tenancy in common as there is in a joint tenancy or a tenancy by the entirety. Gauger v. Gauger, 73 N.J. 538, 542-543, 376 A.2d 523 (1977); Balazinski v. Lebid, 65 N.J. Super. 483, 488-489, 168 A.2d 209 (App.Div. 1961). Tenants in common have possessory rights which extend to the entire premises, each cotenant being equal with fellow cotenants. Baird v. Moore, 50 N.J. Super. 156, 166, 141 A.2d 324 (App.Div. 1958). It has been established in this State that a cemetery plot may be held by two or more persons as tenants in common. Galasso v. Del Guercio, 114 N.J. Super. 327, 331, 276 A.2d 186 (Ch.Div. 1971). Where that occurs, each cotenant is said to have an undivided interest in the whole property, and thus each is entitled to occupy the entire property. Newman v. Chase, 70 N.J. 254, 267, 359 A.2d 474 (1976). Consequently, one cotenant has no right to exclude *98 any other cotenant or to appropriate to his sole use any particular portion of the property in which all have an undivided interest.[11]Galasso v. Del Guercio, supra, 114 N.J. Super. at 331-332, 276 A.2d 186.
In the present case, the Cedar Park deed contains no language to suggest that Mortimer and Norman's ownership interest was by joint tenancy. On the contrary, the deed conveyed the property to Mortimer and Norman and "their heirs and assigns forever." This language belies any contention that the deed created a right of survivorship in the brothers. Furthermore, and perhaps more importantly, language in Mortimer's will evidenced an intent that ownership in the Cedar Park Cemetery plot was by tenancy in common. As noted, Mortimer's will indicated his desire to "be interred in a plot in Cedar Park Cemetery located in New Jersey and commonly owned by my brother Norman and myself."
Consequently, the trial judge correctly concluded that Mortimer and Norman owned the cemetery plot as tenants in common and that, as such, Mortimer's interest devolved to his sons, Joseph and Thomas. Each son inherited a one-fourth undivided interest in the burial plot.
Thomas disappeared in 1973 and has not been heard from since. His wife, a Chistian, and their two children, apparently not raised in the Jewish faith, would be precluded from burial in Cedar Park Cemetery because they were not of the Jewish faith.[12] Joseph died intestate in 1973. At that time, the law of intestate succession provided that the intestate's children would *99 inherit any real property, subject to the spouse's dower or curtesy rights. N.J.S.A. 3A:4-2. Dower rights consisted of a life estate in one-half of the real estate owned by the decedent. N.J.S.A. 3A:35-1. Thus, at the time of Joseph's death, Phyllis had a right to a life estate in one-half of Joseph's interest in the burial plot while the children shared the remainder of that half as well as owning the other half, giving Phyllis a life estate in a one-eighth undivided interest in the entire plot. The two children each had a one-sixteenth undivided interest subject to that life estate and a one-sixteenth interest not subject to dower.[13] The other owners who were cotenants at Joseph's death were Norman, who owned an individual one-half interest, and Thomas, who owned the remaining undivided one-fourth interest.
N.J.S.A. 8A:7-5, quoted above, delimits who may be interred in a burial plot purchased from a licensed cemetery company, and authorizes burial therein of a "relative of" a person with "an ownership interest" as well as the body of any deceased with "the consent of ... one of the owners of such interment space." Plaintiffs nonetheless argue that Phyllis and her children could not be deemed to have an "ownership" interest in the Weiss burial plot because N.J.S.A. 8A:1-2 defines a "lot owner" as someone "in whose name a lot is of record as owner in the office of a cemetery company." Thus, they assert that because neither Phyllis nor her children were registered with the cemetery company as owners, they cannot be considered to have an ownership interest. The motion judge properly rejected the same argument. The "lot owner" of the Weiss burial plot had indeed been recorded in the office of the cemetery company. The co-owners were Norman and Mortimer Weiss. Nothing in the statutory scheme of Title 8A suggests *100 that heirs of those owners could have no ownership interest because they failed to register with the cemetery company or be recorded in the cemetery company's office. Indeed, nothing in N.J.S.A. 8A:7-2, which sets out the law of descent with respect to cemetery plots, divests an heir of ownership where there is a failure of the heir to register as such in a cemetery company office. That statutory provision requires recording with the cemetery company where any one of the heirs releases his or her ownership interest and conveys it to another heir. But nothing is required of an heir who intends to retain his ownership interest in the plot.
The motion judge concluded that Louis Ratafia was properly buried because he was a relative of a person having an ownership interest, and thus met the qualifications of N.J.S.A. 8A:7-5. The Chancery Division, interpreting a predecessor statute having the same language, held that the word relative denoted a blood relationship in Friant v. Dolbow, 41 N.J. Super. 84, 88, 124 A.2d 12 (Ch.Div. 1956). As Louis was Phyllis's father as well as the maternal grandfather of Michael and Geniene, he was certainly a blood relative of a person, indeed of more than one person, having an ownership interest in the plot. Thus, as a matter of law, the motion judge correctly decided that Louis Ratafia had a right to be buried in the plot originally owned by Norman and Mortimer Weiss.
The same result obtained in a somewhat analogous case, Galasso v. Del Guercio, supra (114 N.J. Super. 327, 276 A.2d 186). There plaintiffs' mother had a family mausoleum built containing a total of 17 burial spaces, eight on the upper level and nine on the lower level. She died intestate and was survived by all four of her children. Two of them died and by the time plaintiff's husband died six of the eight upper level spaces were occupied. Defendant, plaintiff's brother, objected to plaintiff's interment of her husband in the family mausoleum in a space next to defendant's wife, a space defendant had intended to occupy himself one day. Id. at 328-329, 276 A.2d 186. Defendant argued that he, as a co-owner with plaintiff, *101 had to give his consent before plaintiff could bury a relative in the family tomb. Id. at 329, 276 A.2d 186. Defendant relied upon N.J.S.A. 8:2-24 (a predecessor to N.J.S.A. 8A:7-5) which differed from the current statute. It only referred to "the wife" of such person holding an interest in the plot or relative and for burial of a person in the plot who was neither an owner nor relative of an owner, or wife thereof, the consent of all other interested persons had to be obtained. (The current statute refers to "the spouse" of a person having an ownership interest in the plot and, unlike the predecessor statute, does not require consent of all owners for non-owners and non-relatives. Compare N.J.S.A. 8A:7-5.)
The Chancery Division first determined that a then effective provision in Title 8 (N.J.S.A. 8:2-21) was inapplicable to the cemetery where the mausoleum was located because it was not an incorporated cemetery association; the governing statutes applied only to incorporated cemetery associations. Instead the court found relevant a regulation of the cemetery providing that only where an application for interment concerns someone other than the immediate family of the owner is permission in writing required. Id. at 330-331, 276 A.2d 186. Since the decedent was part of plaintiff's immediate family, there was no reason to obtain defendant's consent. The court also pointed out that plaintiff's ownership interest, as a tenant in common, gave her the right to any portion of the property to which she had an undivided interest; defendant could not restrict her use of the burial plot to a specific space. Id. at 331-332, 276 A.2d 186. Thus, in the present case, not only was Phyllis free to bury her father in the Weiss family plot, because the terms of N.J.S.A. 8A:7-5 were fulfilled, she was also not restricted to placing him in any particular spot on the property by virtue of her inherited undivided interest as a tenant in common.
We also observe that plaintiffs repeatedly refer to the cemetery's requirement for "signature specimens" which were to be filed by the lot owners with the cemetery. This statement has no support in the record. Klapper was quite emphatic in *102 stating that the cemetery kept no signature cards for lot owners against which to verify signatures on burial authorizations. Thus plaintiffs' reliance on this asserted "fact" is obviously misplaced, and in any event is irrelevant as a matter of law.
Since this question of a forged signature is alleged by plaintiffs to be an issue of material fact which should preclude the entry of summary judgment, their contention must fail. Even assuming the signature was forged, defendants cemetery and funeral home acted properly in securing and implementing the burial of Louis Ratafia in the Weiss burial plot because Phyllis and her children hold an ownership interest in the plot entitling them to bury their blood relative therein.
Simply stated, under the circumstances, since Phyllis was entitled, as a matter of law, to bury her father in the Weiss family plot, the authenticity of the signature of Norman Weiss purporting to authorize the burial is irrelevant. Even if the signature was a forgery, that would not divest Phyllis of her right to have her father buried in the plot in which she and her children hold an undivided one-quarter interest.
Plaintiffs do not directly address the other claims of negligence and intentional infliction of emotional distress asserted in their complaint and dismissed by the grant of summary judgment. The closest they come to doing so is in attempting to rebut the applicability of cases cited by Cedar Park in its trial brief. But plaintiffs cite no legal authority to support a claim that the tort of intentional infliction of emotional distress can be maintained by them where defendants had the legal right to inter Louis Ratafia in the particular cemetery plot. Their argument merely asserts that proximate cause and apportionment of damages are matters for a jury. In any event, there is no reason for an extended discussion of whether plaintiffs' damage claims were properly dismissed. The failure to adequately brief the issues requires it to be dismissed as waived. Matter of Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, *103 48 n. 1, 558 A.2d 19 (App.Div. 1989); Miller v. Reis, 189 N.J. Super. 437, 460 A.2d 210 (App.Div. 1983); D'Ercole v. Norwood Borough, 198 N.J. Super. 531, 487 A.2d 1266 (App.Div. 1984); Cannon v. Krakowitch, 54 N.J. Super. 93, 148 A.2d 213 (App. Div. 1959). Alternatively, we find no merit in such an argument even if made. R. 2:11-3(e)(1)(E).
Finally, plaintiffs seem to suggest that the motion judge erred in granting Cedar Park's motion for summary judgment because two prior motions for summary judgment had been unsuccessful. They seem to say that the main reason Cedar Park's motion succeeded was because plaintiffs' counsel failed to oppose it. The balance of their argument consists of a factual recitation as to why counsel could not respond to that motion. Plaintiffs argue that "it would be a gross miscarriage of equity to allow such an unwarranted motion for summary judgment to stand as a result of simple lack of opposition before a judge who was totally unfamiliar with the case, and thereby deprived the plaintiffs of any opportunity for recovery as a result of Mr. Hill's [plaintiffs' then counsel's] unusual crisis and tragedy."
However, the simple fact of the matter is that the summary judgment from which plaintiffs now appeal was not the motion previously granted by a different judge, which was unopposed by plaintiffs. On the contrary, the motion under scrutiny here was a motion originally made by defendants Ratafia in which Riverside Chapel and Cedar Park Cemetery joined. Plaintiffs filed a brief in opposition to the motion and then filed a reply to defendants' brief thereafter. It was this motion which was the basis for the dismissal of the complaint, not the prior grant of summary judgment. Plaintiffs improperly sought to take an interlocutory appeal, without first seeking leave, and that appeal was dismissed in April 1988. The fact that the earlier motion was unopposed had nothing to do with the ultimate grant of summary judgment to defendants which is the subject of this appeal. There are no disputed material factual issues. *104 Nevertheless, defendants were entitled to judgment as a matter of law for the reasons we have noted.
Affirmed.
NOTES
[1] Phyllis Ratafia Weiss is the widow of one of two sons of the other co-owner, Mortimer Weiss, who is also deceased. Geraldine Weiss was the sister-in-law of Mortimer Weiss and the spouse of Norman Weiss. Her son Jeffrey is the nephew of Mortimer Weiss and was the first cousin of Joseph Weiss (deceased) as well as his brother Thomas (Mortimer's two sons). Jeffrey is also the second cousin of Michael and Geniene Weiss, the two children of Joseph Weiss (deceased) and defendant Phyllis Ratafia Weiss. Louis Ratafia was the father of Phyllis Ratafia and the maternal grandfather of Michael and Geniene Weiss.
[2] Plaintiffs failed to oppose that motion and an order was entered granting it. We dismissed plaintiffs' notice of appeal as interlocutory on April 7, 1988.
[3] Plaintiffs then appealed of right only the September 16, 1988 judgment. After a pre-argument conference under the Civil Appeals Settlement Program, a remand was ordered for appropriate findings of fact and conclusions of law which the parties had agreed the trial judge had failed to make. Pursuant to this remand the judge placed his findings of fact on the record on January 24, 1989 in the presence of the attorneys for the respective parties. A transcript of that opinion was filed with this court on April 27, 1989.
[4] Appellants have failed to state the filing date of each included paper at the head of the copy and state its subject matter as required by R. 2:6-1(b).
[5] On September 19, 1989 we denied Cedar Park's motion to strike portions of appellant's brief, reserving the right to disregard inflammatory or impertinent statements or statements not supported by the record.
[6] We were advised at oral argument that only four of the eight sites have been used to date: Mortimer Weiss, his son Joseph Weiss, and Louis Ratafia occupy the grave site, as now does Norman Weiss.
[7] Mortimer's will was witnessed by Louis and Lillian Ratafia, parents of Phyllis Ratafia who later married Mortimer's son, Joseph.
[8] The deed to the cemetery plot recited that it was "for burial purposes only, and as a place for the burial of the bodies of persons who at the time of death were of the Jewish faith, and for no other purposes whatsoever; ..."
[9] Joseph died in 1973 before the repeal of dower in N.J.S.A. 3B:28-2 as of May 28, 1980.
[10] N.J.S.A. 8A:7-10 was effective December 1, 1971 which is subsequent to the date Norman and Mortimer purchased the cemetery plot. However, the act was effective in Norman's lifetime. As of the act's effective date Thomas and Joseph had inherited their father Mortimer's interest in the plot, becoming co-owners with their uncle, Norman. It does not appear that Cedar Park Cemetery was ever informed that any co-owner was designated as representative for burial authorization purposes. The Cemetery obviously knew that Mortimer had died and that his co-ownership interest obviously devolved to others.
[11] We do not pass upon whether disputing owners of a cemetery plot may have a right to partition. See Baker v. Drabik, 224 N.J. Super. 603, 541 A.2d 229 (App.Div. 1988). Nor must we decide to what extent the co-owners may utilize the remaining grave sites.
[12] Since the deed refers to being of the Jewish faith "at the time of death" there is, of course, the possibility of conversion. However, since the whereabouts of Thomas is unknown, and his wife and children apparently reside in Florida, this further decreases the likelihood of their interest in this grave site.
[13] Under present laws of intestate succession, the ultimate division of ownership would be similar, except that Phyllis would be entitled to claim essentially one-half of the estate, after taking the first $50,000 (N.J.S.A. 3B:5-3), and the children would take equally of the balance (N.J.S.A. 3B:5-4).