**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5147-18T1

AMY BARCHUE,

 Plaintiff-Appellant,

v.

EMMANUEL KPEHE,

 Defendant-Respondent,

and

SOLAMANIE IMPORT &
EXPORT CORP.,

 Defendant.

_____

    Submitted June 3, 2020 – Decided July 1, 2020

    Before Judges Haas and Enright.

    On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2721-17.

    Amy Barchue, appellant pro se.

    Emmanuel Kpehe, respondent pro se, did not file a brief.

PER CURIAM

Plaintiff Amy Barchue appeals from the July 15, 2019 dismissal of her complaint with prejudice and the entry of judgment in favor of defendants Emmanuel Kpehe and Solamanie Import & Export Corp.[1] We affirm.

In June 2017, plaintiff went to Solamanie's office to arrange the shipment of various goods to her daughter in Liberia. She spoke with Kpehe about transporting seven barrels, five boxes and a car that Kpehe sold her. Plaintiff agreed to pay Kpehe $2550 to ship her personalty.

Once Kpehe notified plaintiff her property arrived in Liberia, plaintiff traveled there. Purportedly, she "waited . . . there for one month and one week . . . . [a]nd . . . could not see those items that were shipped." According to plaintiff, Kpehe gave her a telephone number to call about her personal property but the person who answered that number told her, "I'm not working for Emmanuel [Kpehe]. I don't know Emmanuel." Plaintiff's daughter also attempted to retrieve the personalty in Liberia but was told plaintiff did not pay for the goods so they could not be released.

---

[1] Solamanie Import & Export Corp. was dismissed below and is not a party to this appeal.

A-5147-18T1

Plaintiff returned to the United States in early September 2017 and attempted to contact Kpehe by phone and a separate message. She contends he did not respond. When no resolution could be reached to release the goods in Liberia, plaintiff filed suit against defendants.

During the one-day trial of this matter, both plaintiff and Kpehe testified. Plaintiff attested to paying defendants $2550 to transport her personalty to Liberia. Kpehe affirmed he sold a car to plaintiff for $2500 and agreed to ship it to Liberia, along with plaintiff's other items. When asked how much plaintiff paid him, Kpehe answered:

> [i]n total, not counting the cost of shipping, about $2500. This whole agreement was toward the car repair that I did. But when I received the money from her, I did mark down the shipping . . . . She was aware of shipping. She knew the rule, on that [shipping] . . . . [S]he was responsible to take it from there. She was aware it was a joint container, so she had, like 25, 20 or 25% space in the container.
>
> The container was shipped, it got to Liberia, we tried to get in touch with her . . . . The owner of the container . . . . tried to reach [] her, no way . . . . [T]hen I saw her in [the] office . . . . She . . . came and talked to me. I told her, Orlando tried getting in touch with you. I tried to get in touch with you. She[] said, oh, she ran out of money. She will not have the money to free her stuff in Liberia.

A-5147-18T1

After Kpehe testified, he called Orlando Nyeke as a witness to testify on his behalf. Nyeke testified he shipped plaintiff's personalty to Liberia and that after she arrived there, he called her to let her know she needed to pay the "duty for [her] car to the Customs in Liberia." According to Nyeke, plaintiff responded that "she don't have no money for Customs. When she come back, she's going to pay for the car in Liberia." Nyeke notified Kpehe that he was embarrassed that plaintiff refused "to pay for Custom duty in Liberia to free her car." Nyeke testified that because plaintiff did not pay the necessary Customs fee to have her car released from a port in Liberia, he advanced approximately $1500 to ensure its release. But after a year passed and plaintiff still had not satisfied the Customs fee, her car was sold. Nyeke also testified that plaintiff's remaining items were brought to a warehouse for storage, but she "never went for the things." Kpehe and Nyeke affirmed that if you send a car to Liberia and "you can't free it," it is sold.

After plaintiff cross-examined Kpehe and Nyeke, the trial judge found in favor of defendants. The judge confirmed plaintiff had "the burden of proof by a preponderance of evidence" and she had not met that burden. He added, "what hasn't been established is any type of contract between you and the defendant[s]." Further, the judge stated:

You've testified about your understanding of your agreement with the defendant, but you have not satisfied your burden of proof to show that there was an actual contract entered into. And, that is because there seems to be no meeting of the minds as to be essential terms of this agreement.

. . . .

I'm sorry that you think you've lost some goods and your car, but, as I said, you haven't met your burden of proof to show that they're responsible for it.

. . . .

There seems to be some disagreement, as to the understanding that you entered into with the defendants. And because of that, it's unclear to me what the terms of the contract are.

On appeal, plaintiff contends the trial court "committed error in failing to acknowledge fraud and unlawful business practices committed by the defendant in connection with the sale and transfer of goods without a signed business contract." (Emphasis added). Plaintiff cites to no authority in support of this argument and fails to specify how the trial judge erred. Plaintiff also argues, based on a text message exchange with Kpehe, that she was "led to understand that a written contract for the transaction was not required for the items being sent from the United States to Liberia, only a 'one[-]time payment,'" which she "paid in full." Thus, she seeks reimbursement of approximately $25,000,

claiming this amount represents her shipping fees, airfare to retrieve her goods, and the alleged value of the items entrusted to defendants.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. State v. Parker, 212 N.J. 269, 278 (2012); Mountain Hill, LLC v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

"A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (citations omitted). Where parties agree on essential terms and manifest some intention to be bound by those terms, an enforceable contract is created. Ibid. By contrast, when the parties do not agree on essential terms, a contract is typically deemed unenforceable.

A-5147-18T1

Guided by these principles and our careful review of the record, we are satisfied the trial judge properly found plaintiff failed to marshal a sufficient quantum of evidence to demonstrate she entered into an enforceable contract with defendants or was entitled to the reimbursement figure she now seeks. Therefore, we perceive no basis to disturb the trial court's July 15, 2019 judgment. Additionally, plaintiff's "failure to adequately brief [an issue] requires it to be dismissed as waived." See Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102 (App. Div. 1990). It is not this court's obligation to speculate about the underlying reasons for plaintiff's position or to construct her argument for her. See Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983) (issues not briefed beyond conclusory statements need not be addressed).

To the extent we have not addressed plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5147-18T1