**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2985-21

IN THE MATTER OF THE
ESTATE OF NGAN LAU
KWAN SETO, deceased.

_____

Argued April 17, 2023 – Decided February 12, 2024

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. 266784.

James M. Nardelli argued the cause for appellant Steven Kwan (Parsons & Nardelli, attorneys; James M. Nardelli, on the briefs).

Roy Joseph Thibodaux, III, argued the cause for respondent Dr. Peter Kwan (Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross, LLC, attorneys; Roy Joseph Thibodaux, III, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Petitioner Steven Kwan appeals from two orders of the Chancery Division: (1) the October 12, 2021 order granting summary judgment to

defendant Peter Kwan in this will contest; and (2) the April 25, 2022 order denying Steven's application for the decedent's estate to be charged for his attorney's fees and costs.[1]  We affirm.

I.

The following facts are derived from the record.  Ngan Lau Kwan Seto (decedent) had four children: Peter, her eldest son, Steven, Nancy Young, and Lisa Palestine.

In 1980, decedent purchased real property in Woodside, New York (the Woodside property).  In 1985, she transferred the Woodside property from herself to herself, Peter, and Steven as joint tenants with a right of survivorship.

In 1988, decedent, Peter, and Steven purchased real property in South Plainfield (the South Plainfield property) as co-owners.  In 1993, decedent and Steven transferred their interest in the South Plainfield property to Peter and his spouse.  According to Steven, the transfer to Peter was pursuant to an agreement in which he would release his interest in the South Plainfield property in exchange for Peter's release of his interest in the Woodside property.

---

[1]  Because the parties share a surname we refer to them by their first names.  No disrespect is intended.

A-2985-21

In 1995, as part of a refinancing transaction on the Woodside property sought by decedent and Steven, a mortgage lender required that Peter be removed as a joint tenant with a right of survivorship. Steven conceded that unless Peter agreed to the change in ownership, he and decedent would have been unable to refinance the mortgage.

Steven identified and retained an attorney to prepare a deed transferring ownership of the Woodside property from decedent, Peter, and Steven to decedent and Steven. Decedent, Peter, Steven, the attorney retained by Steven, and a notary public were in attendance when the deed was executed by decedent, Peter, and Steven. The face of the deed in the record plainly transfers the Woodside property to decedent and Steven as tenants in common. The deed does not include language regarding a joint tenancy with a right of survivorship. There is handwriting on the deed that identifies the parties to the transaction. Steven admits that his signature on the 1995 deed is real and that he was present when decedent signed the deed. Steven paid the attorney for preparing the deed.

On August 4, 2010, decedent executed a last will and testament prepared for her by an attorney in New York City. Article Four of the will provided that "my entire interest (that being 50% of the overall) in the [Woodside property] be devised and bequeathed to my eldest son Peter Kwan . . . ." Article Five of

the will provided that if she had been predeceased by Peter, she devised and bequeathed her interest in the Woodside property to Peter's children. The will does not address any other assets.

On May 28, 2019, decedent, then a resident of Middlesex County, died. She was survived by her children. After Peter submitted the will to probate, Steven filed a verified complaint in the Chancery Division. He alleged: (1) the will is invalid because it was the product of undue influence by Peter over decedent; and (2) decedent's estate did not include an interest in the Woodside property because the 1995 deed purporting to transfer the parcel to decedent and Steven as tenants in common was fraudulent. Steven alleged it was the intention of decedent, Peter, and Steven that the 1995 transfer of the Woodside property would be from decedent, Peter, and Steven as joint tenants with a right of survivorship to decedent and Steven as joint tenants with a right of survivorship.

In support of his allegation that the will is invalid, Steven alleged that Peter maintained a confidential relationship with decedent, who spoke limited English and did not complete elementary school in her native China. According to the complaint, Peter convinced decedent to meet with an attorney for the purpose of drafting the will. Steven alleged that Peter secretly communicated with the attorney and directed him to include provisions in the will transferring

4

decedent's purported interest in the Woodside property to Peter or his children without decedent's knowledge or consent.

Steven also alleged the circumstances surrounding the execution of decedent's will were suspicious because: (1) the will does not dispose of decedent's personal property or residuary estate; (2) the sole dispositive provision of the will purports to devise an interest in real property that was subject to termination on decedent's death; (3) the deed to the Woodside property contains whited-out and handwritten provisions;[2] (4) decedent did not read, write, speak, or understand English; and (5) the will was contrary to the intentions expressed by decedent at the time of the 1993 and 1995 transactions involving the Woodside property to create a joint tenancy with a right of survivorship with Steven.

According to the complaint, at the time decedent, Peter, and Steven executed the 1995 deed, it contained a typewritten passage identifying decedent and Steven as receiving the property as joint tenants with a right of survivorship. He alleged that

---

[2] The complaint and the parties' briefs use the phrase "white out" as both a verb and a noun. This appears to be a reference to Wite-Out, the commercial name for a commonly used quick dry correction fluid. The court understands the term to mean both the act of applying correction fluid to a document and the correction fluid itself, regardless of whether the product Wite-Out was used.

A-2985-21

> [s]ometime after decedent and [Steven] executed the [1995 deed], and without providing any notice to decedent or [Steven], Peter . . . caused the [d]eed to be altered to white out the provision identifying decedent and [Steven] as "joint tenants with right of survivorship" and replace it with a handwritten provision which made no[] reference to any right of survivorship.

Steven alleged Peter thereafter caused the altered deed to be recorded.

Steven sought an order declaring the will null and void, declaring that the Woodside property was not part of decedent's estate and belongs solely to him as the surviving joint tenant, appointing him personal representative of the estate, and awarding him attorney's fees and costs.

On May 7, 2021, Peter's counsel sent Steven's counsel a letter pursuant to R. 1:4-8, notifying him that Steven's claims were frivolous and demanding withdrawal of the verified complaint. He stated that a failure to withdraw the verified complaint would expose Steven to sanctions, including Peter's attorney's fees and costs.

After discovery, Peter moved for summary judgment. He denied ever having seen decedent's will or been made aware of its contents prior to her death. Peter also denied having known of or spoken to the attorney who prepared decedent's will. Peter certified that pursuant to Chinese tradition, which decedent followed closely, a mother leaves her estate to her male heirs and that

6

because he was her only child with grandsons, it would have been logical to his mother to leave her only valuable asset to him and, if he died before her, to his sons. He certified that in 2010, his mother was strong willed, independent, and of sound mind, and could have taken a train into New York City to retain an attorney to execute her will without her children knowing or being concerned for her safety. He noted that decedent lived with Steven for approximately eight years before and nine years after the will was executed.

Peter also denied altering or causing the alteration of the 1995 deed and certified that he had no involvement with its recording. During discovery, Steven could not produce a copy of the 1995 deed that he signed. He admitted that he has never seen the 1995 deed with white-out in or on it in any form. He also admitted that he never observed anyone white-out any provision of the deed. When asked during discovery whether he claimed that the notary public whited-out the phrase "joint tenancy with right to survivorship" on the deed without Steven's permission, he testified, "I did not say that; okay." Steven admitted that he does "not have any proof" that the notary public applied white-out to any portion of the 1995 deed without the parties' consent.

At the time of the execution of the 1995 deed, the role of the notary public was "title closer" responsible to notarize the deed, notarize the mortgage, and

conform the deed and mortgage. The notary testified at his deposition that he witnessed decedent, Peter, and Steven sign the deed, and that handwritten notations on the deed were placed there by him at the direction of the lenders with the approval of the parties to the transaction. The notary confirmed that he maintained control of the fully-executed deed, not allowing any changes to the document, until he delivered it to the title company to be recorded.

Discovery also revealed that subsequent to the recording of the 1995 deed, Steven used the Woodside property as collateral for another loan. He did not, however, raise any concerns at that time about the terms of the 1995 deed or suggest that he and decedent owned the property as joint tenants with a right of survivorship.

In opposition to Peter's motion Steven relied on the allegations in the complaint with respect to the alleged confidential relationship and pointed out that decedent's will was discovered in Peter's safe deposit box, even though he denied having been aware of the will. In addition, Steven argued that he would present the testimony of an expert forensic document examiner who would opine that the 1995 deed was altered with white-out. That expert, however, admitted that she never viewed the original deed and formed her opinion based on a photocopy of the deed.

8

On October 7, 2021, the trial court issued an oral opinion granting Peter's motion. On October 12, 2021, the court issued a written statement of reasons expanding on its reasoning. The court found there was no dispute of material fact with respect to the absence of a confidential relationship between decedent and Peter. The court found that Steven produced no evidence suggesting that in 2010 decedent was not of sound mind, could not make a decision with respect to the disposition of her property, or was dependent on Peter, and concluded that the familial relationship between Peter and decedent was insufficient to create a confidential relationship. The court noted that decedent lived with Steven for eight years prior and nine years after executing the will.

The court also found that Steven's allegations with respect to Peter's participation in the drafting of the will or the formulation of its contents was "mere speculation." Of note, the court found, was that the court authorized Steven to depose Michael Lam, the attorney who drafted decedent's will, but Steven never carried out the deposition. The court also found significant the fact that Steven was permitted to review Peter's bank records but uncovered no evidence of undue financial influence over decedent, despite his claim Peter dissipated the proceeds of a settlement decedent received after an accident, which he claimed proved Peter's financial control over decedent.

A-2985-21

The court also found no genuine issue of material fact with respect to the validity of the 1995 deed granting Steven an interest as a tenant in common in the Woodside property.  The court began its analysis by finding that the deed, which was notarized by a licensed notary public, is presumed valid.  After a review of the moving papers, the court concluded that Steven failed to produce clear and convincing evidence that a fact finder could conclude overcomes the presumption.  The court noted that Steven did not witness anyone alter the document and never saw a copy of the deed that had white-out on it.  The court rejected the expert opinion proffered by Steven, which it described as a "scant single paragraph" and a net opinion that was insufficient to create a disputed issue of material fact regarding the alleged alteration of the will.

In addition, the court concluded that Steven produced insufficient proof to establish that decedent and he intended the 1995 deed to covey the property to themselves as joint tenants with the right of survivorship.  The court noted that decedent's 2010 will conveyed her interest in the Woodside property, which establishes that she believed she owned the property with Steven as tenants in common.  An October 12, 2021 order memorializes the court's decision.

Peter thereafter moved for attorney's fees and costs pursuant to R. 1:4-8 and N.J.S.A. 2A:15-59.  Steven opposed the motion.

On February 25, 2022, the court issued a written opinion denying Peter's motion. The court found

> it was reasonable for [Steven] to question the 1995 [d]eed based on the handwritten notes on the deed, [Steven's] family history, and the history of the two properties. However, based on discovery, including the deposition of [the notary], the [c]ourt was satisfied that there was no issue of material fact as it related to the validity of the 1995 [d]eed.

> It was also reasonable for [Steven] to bring a claim for undue influence based on the circumstances. Based on the pleadings, there was enough information to suspect the potential for undue influence and to send this case to discovery. Post-discovery, the [c]ourt dismissed the claim summarily in favor of [Peter]. While the [c]ourt did not agree with [Steven] that [d]ecedent and [Peter] were in a confidential relationship and that there were suspicious circumstances surrounding the [w]ill, the [c]ourt certainly appreciated the argument. The [c]ourt was only able to make such determination after carefully reviewing [Steven's] allegations, the depositions of both [Steven] and [Peter], and the certifications of other family members.

A February 25, 2022 order denies Peter's motion, and directs that the estate shall bear the attorney's fees and costs incurred by both Peter and Steven.

Peter thereafter moved for partial reconsideration. He argued that the trial court erred when it ordered that the estate bear the attorney's fees and costs incurred by Steven, as Steven did not request such relief. In addition, he argued that because the estate is of limited value, charging the estate for Steven's

11

attorney's fees and costs would effectively deplete Peter's inheritance. Steven cross-moved for an order charging the estate for his attorney's fees and costs.

On April 25, 2022, the trial court issued an order granting Peter's motion for partial reconsideration and denying Steven's cross-motion. The order vacates the February 25, 2022 order to the extent it directs the estate be charged for either party's attorney's fees and costs. In a written statement of reasons incorporated into the order, the court stated that when it "ordered [Steven's] attorneys' fees to be paid out of the Estate, [it] did not consider the [Woodside property] was essentially the Estate's sole asset, and thus, that such order would result in [Peter] having to pay for both his and [Steven's] attorneys' fees. This was not the outcome that the [c]ourt had intended . . . ." The court denied Steven's cross-motion for the same reasons.

This appeal followed. Steven argues the trial court erred by not viewing the evidence proffered in support of Peter's summary judgment motion in a light most favorable to Steven. He argues that had the court viewed favorably Steven's testimony regarding the intent of the parties to the 1995 transaction and his memory of signing the deed containing language transferring the property to decedent and Steven as joint tenants with a right of survivorship, it should have denied summary judgment. He makes a similar argument with respect to the

court failing to view favorably his testimony regarding decedent's confidential relationship with Peter. Steven argues that had the court credited his testimony, it should have denied summary judgment. Finally, Steven argues that the trial court abused its discretion when it denied his application to charge the estate for the attorney's fees and costs he incurred.

## II.

We begin with the trial court's rejection of Steven's claim that the will was the product of undue influence by Peter. We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer

to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Our Supreme Court has cautioned that summary judgment ordinarily should not be granted where an action depends on a determination of a person's state of mind, including claims of fraud or duress. Lombardi v. Masso, 207 N.J. 517, 544 (2011) (quotations omitted); see also Ruvolo v. Am. Casualty Co., 39 N.J. 490, 500 (1963) (stating that a court should hesitate to grant summary judgment when it must "resolve questions of intent and mental capacity"); Marte v. Oliveras, 378 N.J. Super. 261, 276 (App. Div. 2005) (stating that factual issues related to alleged undue influence are not susceptible to resolution on motion for judgment).

On the other hand, if the court determines there is no genuine issue of material fact, the court is not precluded from granting summary judgment, notwithstanding issues involving state of mind. Fiedler v. Stonack, 141 N.J. 101, 129 (1955); Bower v. The Estaugh, 146 N.J. Super. 116, 121 (App. Div. 1977) (affirming grant of summary judgment where court discerns "no evidence of undue influence"). Also, "when the evidence is so one-sided that one party must prevail as a matter of law, the trial court should not hesitate to grant

summary judgment."  Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995) (quotations omitted).

In evaluating a motion for summary judgment to determine the presence of a genuine issue of material fact, the court must consider both the allocation of the burden of persuasion, and the standard of proof.  "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact."  R. 4:46-2(c).  We must be "guided by the same evidentiary standard of proof – by a preponderance of the evidence or clear and convincing evidence – that would apply at the trial on the merits . . . ."  Brill, 142 N.J. at 533.

When the validity of a will is challenged, it is generally presumed that "the testator was of sound mind and competent when he executed the will."  Gellert v. Livingston, 5 N.J. 65, 71 (1950).  However, "[i]f a will is tainted by 'undue influence,' it may be overturned."  Haynes v. First Nat'l Bank of N.J., 87 N.J. 163, 176 (1981).  "Undue influence has been defined as mental, moral or physical exertion which has destroyed the free agency of a testator by preventing

the testator from following the dictates of his own mind and will and accepting instead the domination and influence of another." Ibid. (quotation omitted).

Ordinarily, the opponent of a will bears the burden to prove undue influence. In re Rittenhouse's Will, 19 N.J. 375, 378 (1955). However, certain circumstances may create a presumption of undue influence, shifting the burden of proof to the will's proponent. Id. at 379. This occurs when two conditions are met: first, "the will benefits one who stood in a confidential relationship with the testatrix"; and second, "there are additional circumstances of a suspicious character present which require explanation." Id. at 378-79. The opponent of the will must prove a confidential relationship by a preponderance of the evidence. Est. of Ostlund v. Ostlund, 391 N.J. Super. 390, 402 (App. Div. 2007).

The first element of a confidential relationship is difficult to define. Pascale v. Pascale, 113 N.J. 20, 34 (1988). It includes a relationship "in which confidence is naturally inspired, or, in fact, reasonably exists." Ibid. (quoting In re Est. of Fulper, 99 N.J. Eq. 293, 314 (Prerog. Ct. 1926)). It requires an element of inequality between the parties to the relationship. Ibid. One party must deal with the other from a position of "superior knowledge of the matter derived from a fiduciary relation, or from over-mastering influence," or the other party must deal from a position of "weakness, dependence or trust justifiably

reposed," such that "unfair advantage is rendered possible." Ibid. (quotations omitted).

Our courts have recognized, "[a]mong the most natural of confidential relationships is that of parent and child." Ibid. However, "the mere existence of family ties does not create . . . a confidential relationship." Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952). The court must still examine the relationship to ascertain whether there is dominance of one party over the other, or inequality of dealing. The court must consider such factors as:

> whether trust and confidence between the parties actually exist, whether they are dealing on terms of equality, whether one side has superior knowledge of the details and effect of a proposed transaction based on a fiduciary relationship, whether one side has exerted over-mastering influence over the other or whether one side is weak or dependent.
>
> [Est. of Ostlund, 391 N.J. Super. at 402.]

In Haynes, the Court found there was a confidential relationship between a mother and child, where the mother was "afflicted by debilitations of advanced years, was dependent upon her sole surviving child with whom she lived and upon whom she relied for companionship, care and support." 87 N.J. at 176.

The second element necessary to create a presumption of "undue influence is the presence of suspicious circumstances . . . ." Ibid. "Such circumstances

need to be no more than 'slight.'"  Ibid.; accord In re Est. of Stockdale, 196 N.J. 275, 304 (2008).

We have carefully reviewed the record in light of these precedents and agree with the trial court's conclusion that the evidence presented in support of Peter's motion for summary judgment, even when viewed in a light most favorable to Steven, does not raise a genuine issue of material fact with respect to the validity of the will.  The record contains no evidence that Peter's relationship with decedent was anything more than that of a mother and son.  Decedent, who lived with Steven for eight years before and nine years after she executed the will, although of limited education, was by all accounts in the record an independent, determined, and competent woman in 2010.  A widowed mother of four young children, decedent immigrated to this country from China despite not speaking or reading English and worked tirelessly at a low-wage position to support her family.  Despite these challenges, over the years decedent raised her family and accumulated sufficient wealth to purchase two homes, one of which was a multi-family property that generated rental income.  Nothing in the record suggests she suffered from a diminished capacity, was subject to overbearing manipulation by Peter, or was anything other than in control of her personal affairs in 2010 when she executed her will.

A-2985-21

In addition, the record demonstrates that decedent was dedicated to her eldest son. Working in a factory as a seamstress seven days a week, decedent provided financial support for Peter's education in medical school. She later transferred one of the homes she owned to Peter and his wife for no apparent monetary consideration. Steven admits that decedent's preference for Peter was consistent with the Chinese cultural norms to which she held a lifelong dedication. As the trial court found, Steven could point to no evidence suggesting that it would have been unusual for decedent to bequeath her only significant asset to Peter, giving him a fifty-percent interest in a property, the other fifty percent of which is owned by Steven. Decedent's will effectively provides that both of her sons will inherit the Woodside property, while her elder son retained ownership of the South Plainfield residence she transferred to him and his wife years earlier, a preference consistent with his status as eldest son. We see no basis on which to conclude that the trial court erred in granting summary judgment with respect to the validity of the will.

We turn to the trial court's grant of summary judgment with respect to the validity of the 1995 deed. By statute, a joint tenancy is created by express language in the document transferring ownership.

> [N]o estate shall be considered and adjudged to be an estate in joint tenancy, except it be expressly set forth

in the grant or devise creating such estate that it was or is the intention of the parties to create an estate in joint tenancy and not an estate of tenancy in common, any law, usage, or decision theretofore made, to the contrary notwithstanding.

[N.J.S.A. 46:3-17.]

"There is no right of survivorship in a tenancy in common as there is in a joint tenancy . . . ." Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 97 (App. Div. 1990). Tenants in common have "the right of each to occupy the whole in common with the [other]." Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 564, n.2 (2011) (quoting Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 389 N.J. Super. 219, 225 (Ch. Div. 2006) (alteration in original)); accord Burbach v. Sussex Cnty. Mun. Utils. Auth., 318 N.J. Super. 228, 233–34 (App. Div. 1999). Therefore, the death of one tenant does not give the other tenant the right to the whole. Weiss, 240 N.J. Super. at 96.

We applied these principles in Weiss. There, two brothers purchased a cemetery plot containing eight grave sites. Id. at 90-91. One brother died many years before the other. Id. at 91, 93. After the death of the second brother, a dispute arose among family members with respect to who owned the plot. The decedents of the first brother to die contended that his interest in the plot passed

20

to them because the plot had been owned by the brothers as tenants in common.

Id. at 93. We agreed. As we explained, when the brothers

> bought the cemetery plot, they took title as tenants in common rather than as joint tenants with the right of survivorship. This is so because there is nothing in the deed to indicate that they intended to create a joint tenancy. In the absence of language expressly indicating the creation of a joint tenancy or evidence that such was the intent of the parties, as a matter of law, possession of the two brothers in the property was as tenants in common.
>
> [Id. at 97.]

Steven does not dispute these legal principles. He argues, however, that he has raised a genuine issue of material fact with respect to whether the 1995 deed contained language transferring the property to decedent and him as joint tenants with a right of survivorship, which was nefariously removed by Peter or another unnamed person. We have carefully reviewed the record and agree with the trial court that Steven's position is supported by nothing more than speculation. While the deed contains handwritten notations, the notary who witnessed the parties sign the deed testified that the handwritten notations were made to conform the deed to the mortgage with the parties' consent. Although Steven testified that he recalled the deed containing language transferring the property to him and his mother as joint tenants with a right of survivorship, he

21

did not produce a copy of a deed containing that language and produced no proof that the deed was altered after he signed it. Moreover, decedent's will expressly bequeaths her interest in the Woodside property to Peter, establishing that she believed she owned the property with Steven as a tenant in common.

Finally, we address the trial court's denial of Steven's motion to charge the estate for his attorney's fees and costs. The decision to award attorney's fees rests "within the sound discretion of the trial court." Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

While New Jersey generally disfavors the shifting of attorney's fees, a prevailing party may recover attorney's fees if expressly provided by statute, court rule, or contract. Collier, 167 N.J. at 440 (citing North Bergen Rex

Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999) and Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 504 (1983)).

Rule 4:42-9(a)(3) permits the award of fees in probate actions. "If probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court <u>may</u> make an allowance to the proponent and the contestant, to be paid out of the estate." <u>Ibid.</u> (emphasis added). In accordance with this rule, courts may allow counsel fees to both the proponent and contestant in a will dispute "[e]xcept in a weak or meretricious case . . . ." <u>In re Prob. of Will & Codicil of Macool</u>, 416 N.J. Super. 298, 313 (App. Div. 2010) (alteration in original) (quoting <u>In re Reisdorf</u>, 80 N.J. 319, 326 (1979)).

We see no abuse of discretion in the trial court's denial of Steven's fee application in light of his failure to secure any relief and the relatively small value of the estate. As the trial court noted, charging the estate for the attorney's fees and costs of both parties would effectively deprive Peter of his inheritance. While Steven's claims may not have been frivolous, that alone does not mandate that he be awarded attorney's fees and costs against the estate.

23

To the extent we have not specifically addressed any of Steven's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2985-21